**CARLSON LYNCH, LLP**
TODD D. CARPENTER (234464)
tcarpenter@carlsonlynch.com
SCOTT G. BRADEN (305051)
sbraden@carlsonlynch.com
1350 Columbia Street, Suite 603
San Diego, CA 92101
Tel:   619-762-1910
Fax:   619-756-6991

*Attorneys for Plaintiff
and the Proposed Class*

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SIOBHAN MORROW, on Behalf of Herself and All Others Similarly Situated,<br><br>Plaintiff,<br><br>v.<br><br>NAVY FEDERAL CREDIT UNION,<br><br>Defendant. | Case No. **'20CV1636 LAB JLB**<br><br>**CLASS ACTION COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

Plaintiff Siobhan Morrow, on behalf of herself and all persons similarly situated, alleges the following based on personal knowledge as to allegations regarding the Plaintiff and on information and belief as to other allegations.

## NATURE OF ACTION

1. Plaintiff brings this action on behalf of herself and a class of all similarly situated consumers against Defendant Navy Federal Credit Union ("NFCU" or "Defendant"), arising from its unlawful assessment of International Service Assessment Fees ("ISAF") on purchases which took place in the United States. NFCU assesses hidden ISAF charges to its debit cardholders for purchases made online within the United States from retailers based abroad.

2. NFCU's checking account and debit card services are governed by NFCU's standard account agreement, which incorporates NFCU's Schedule of Fees and Charges

1
CLASS ACTION COMPLAINT

(the "Schedule").[1] The Schedule provides that a "1% per transaction" ISAF applies only to "Point-of-sale and ATM transactions made in foreign countries." Ex. A at p. 3. However, nothing in the Schedule or any other NFCU checking account document authorizes NFCU to apply the 1% ISAF to online purchases made from within the United States. In fact, the Schedule's prohibition of such charges is confirmed by NFCU's website and debit card disclosures, discussed below. At the very least, the Schedule is ambiguous as to whether "transactions made in foreign countries" means in-person transaction made on foreign soil. Accordingly, NFCU breached its contract with Plaintiff and Class Members each time it applies its 1% ISAF to online purchases made within the United States.

3. Plaintiff and other NFCU customers have been injured by NFCU's wrongful assessment of ISAFs on internet purchases made within the United States during the statute of limitations period. Therefore, on behalf of herself and the proposed Classes (defined below), Plaintiff brings this proposed class action seeking damages and other relief against NFCU for breach of contract, breach of the implied covenant of good faith and fair dealing, and conversion.

## JURISDICTION AND VENUE

4. This Court has original jurisdiction of this action under the Class Action Fairness Act of 2005. Pursuant to 28 U.S.C. §§ 1332(d)(2) and (6), this Court has original jurisdiction because the aggregate claims of the putative class members exceed $5 million, exclusive of interest and costs, and at least one of the members of the proposed classes is a citizen of a different state than NFCU.

5. Venue is proper in this district pursuant to 28 U.S.C. § 1391 because NFCU is subject to personal jurisdiction here and regularly conducts business in this District, and because the Plaintiff resides in this District and the events giving rise to Plaintiff's claims occurred in this district.

---

[1] A true and accurate copy of the Schedule is attached hereto as Exhibit A.

**PARTIES**

6. Plaintiff is a resident of San Diego, California. Plaintiff has a checking account with NFCU. On or about July 9, 2020, Plaintiff used her NFCU checking account to make a purchase of $137.56 from Chicme.com, an online retailer of women's clothing based in the Cyprus, from her home in San Diego. Plaintiff was unaware that Chicme.com was based outside the United States. NFCU then charged Plaintiff an ISAF of $1.38 in connection with the purchase—approximately 1% of the total. Under the terms of the Schedule, NFCU was not entitled to assess any ISAF on Plaintiff's purchase because the purchase occurred within the United States.

7. Defendant NFCU is a national bank with its headquarters and principal place of business located in Vienna, Virginia. Among other things, NFCU is engaged in the business of providing retail banking services to consumers, including Plaintiff and members of the putative class, which includes the issuance of debit cards for use by its customers in conjunction with their checking accounts. NFCU operates banking centers, and thus conducts business, throughout the State of California and the United States

**FACTUAL ALLEGATIONS**

**I. Extensive Prior Litigation Regarding Undisclosed International Transaction Fees[2]**

8. While international transaction fees appear at first to be a small, negligible amount, hidden and inflated international transaction fees have been the subject of substantial litigation due to the significant harm they cause banking customers, in aggregate, throughout the country. Indeed, costly undisclosed international transaction fees have resulted in tremendous harm to consumers. In 2001, a multidistrict litigation was established in the Southern District of New York, entitled *In Re: Currency Conversion Fee Antitrust Litigation*, MDL No. 1401. The plaintiffs alleged that credit card agreements and statements poorly disclosed international transaction fees and that credit card companies colluded in fixing the fees at an inflated amount. Specifically, the

---

[2] Or International Service Assessment fees, under NFCU's nomenclature.

complaints alleged that VISA and MasterCard charged a collusively set base international transaction fee equal to 1% of the amount of the foreign currency transaction.[3]

9.  Though the 1% amount is seemingly small, the fees add up for banks and credit card companies. The 1% currency exchange fees gave VISA International $424 million in revenue in 2004, only one of the years covered in the lawsuit, making up nearly 30% of its revenue that year.[4] Many banks charged an even higher percent on top of VISA's 1% fee. Ultimately, the MDL resulted in a class-wide settlement of $336 million in 2006. In 2012, settlement checks were disseminated to over 10 million banking customers.[5]

10.  This action, unlike *In Re: Currency Conversion Fee Antitrust Litigation*, does not concern the assessment of international transaction fees on credit card holders, but instead concerns a very similar practice by NFCU that is equally pernicious and pervasive: the assessment of hidden ISAF charges on debit cardholders such as Plaintiff who are assessed fees unsuspectingly as a result of online shopping contrary to the terms of NFCU's account disclosures.

## II. NFCU's Schedule Prohibits the Assessment of ISAFs On Internet Purchases Made Within the United States

11.  NCFU sets forth the terms of the ISAF on page 3 of the Schedule:

---

[3] In addition, the MDL defendant banks tacked on an additional collusively set international transaction fee of their own, generally 2%. The plaintiffs alleged that VISA and MasterCard networks actively colluded with their member banks and assisted in implementing and facilitating these "second tier" foreign transaction fees by amending their rules and procedures to accommodate these fees, and by colluding with the MDL defendant banks to charge these fees. *See Ross v. American Express Company*, Case No. 1:04CV05723, 2010 WL 6500949 (S.D.N.Y.) (first amended class action complaint).

[4] https://www.latimes.com/archives/la-xpm-2008-jan-06-tr-insider6-story.html

[5] https://topclassactions.com/lawsuit-settlements/lawsuit-news/1468-credit-card-foreign-transaction-fee-settlement-checks-arrive/; https://www.bigclassaction.com/settlement/currency-conversion-fee-settlement.php?ref=rss

| Navy Federal Debit Card/GO Prepaid Card/CUCARD/Visa Buxx Card | |
|---|---|
| International Transactions—Non-Navy Federal ATMs and Point-of-Sale | |
| Point-of-sale and ATM transactions made in foreign countries | 1% per transaction |

12. It is evident from the express terms of this provision that "made in foreign countries" means transactions performed by the cardholder while physically outside the United States. Nowhere does the disclosure state that the ISAF will be applied to online purchases made from the United States. Indeed, this is the only reasonable interpretation of the provision, especially considering that in describing the ISAF, NFCU's website provides:

> Any time you use your Navy Federal Debit Card or CUCARD **_overseas_**, you'll be charged a 1% International Service Assessment (ISA) fee.[6]

13. Lest there be any doubt, NFCU's debit card disclosure document, which also forms the basis of the account agreement, provides unequivocally:

> **Foreign/International Transactions:** Transactions using your DC [debit card] _made in foreign countries_ will post to your account in U.S. dollars and will be charged an International Service Assessment Fee. This fee will be identified as a separate transaction on your statement. The fee will be assessed on purchases and ATM transactions as follows:
>
> a. **_Transactions made in foreign countries will be charged 1.0% of the transaction amount_**.[7]

14. The debit card disclosure uses the phrase "transactions made in foreign countries" synonymously with the Schedule's "Point-of-sale [] transactions made in foreign countries" and applies the same 1% ISAF fee to those transactions. This can only mean that the 1% ISAF is assessed on purchases made physically outside the United States.

---

[6] https://www.navyfederal.org/products-services/cards/cards-overseas.php#debitcard3-accord-0

[7] *See* https://www.navyfederal.org/pdf/debitcards/NFCU_210AB.pdf, at ¶ 7. A true and accurate copy of the Debit Card Disclosure is attached hereto as Exhibit B. An identical provision exists in NFCU's Business Debit Card Agreement and Disclosure. *See* https://www.navyfederal.org/pdf/disclosures/NFCU_210B.pdf, at ¶ 7.

15. From a policy standpoint, this reading of the contract makes the most sense. NFCU accountholders will always know (or at least should know) if they are making an in-person purchase outside the United States, and so can rightly expect to be charged the 1% ISAF. However, the same cannot be said for NFCU accountholders making purchases from online vendors, many of whom do not conspicuously disclose (or in some cases, not at all) that they are based outside the United States. Indeed, Plaintiff herself was not aware that Chicme.com was based in the Cyprus—a fact that could only be learned from combing the website's terms and conditions.

16. Indeed, other instances of the term "Point-of-Sale" in the Schedule only support Plaintiff's plain reading of the ISAF provision. The fine print at the bottom of page 3 of the Schedule, directly under the ISAF provision, reads: "Navy Federal Gift Cards cannot be used to **obtain cash from the ATM or cash back at the Point-of-Sale**." Here, the Schedule first refers to an *ATM* as the physical machine from which a customer attempts to "obtain cash." Then, in the same sentence using the same parallel structure, the Schedule refers to the *point of sale* as the physical location where the customer attempts to obtain "cash back." Obviously, ATM withdrawals can only occur in person at the physical location of the ATM, and likewise, obtaining cash back can only occur at the physical location of the store cashier.[8]

---

[8] Further uses of the term "point-of-sale" in other NFCU account disclosures are consistent with the term's meaning as in-person transactions only:

> Visa Check Card—You can use your Check Card to pay for goods and services **at millions of merchants worldwide** wherever the Visa Debit Card is accepted. The amount of the purchase will automatically be debited from your checking account. When using your Check Card for purchases, **it is never necessary to enter your PIN. Simply select the "credit" button and sign the receipt.** Navy Federal's daily transaction limits ***for these point-of-sale (POS) transactions*** are $5,000 for Flagship Checking, $2,500 for Active Duty Checking®, and $2,500 for EveryDay Checking, e-Checking, and Campus Checking.

https://www.navyfederal.org/pdf/ebrochures/1184e.pdf?TB_iframe=true#:~:text=Navy%20Federal's%20daily%20transaction%20limits,that%20your%20money%20is%20safe, "24-Hour Account Access", accessed August 6, 2020. The same published disclosure also refers to "Point-of-sale cash back", which can only occur in-person. *See id.* at p. 3.

17. Other distinct uses of the verbs "made" and "processed" throughout the Schedule also support this reading. For instance, the Schedule uses the verb "made" or "make" to refer to actions performed at the customer's physical location. *See, e.g.*, Ex. A at p. 3, row 11 ("Deposits can be *made* at Navy Federal-owned ATMS …"); *id.* ("Loan payments can only be *made* at Navy Federal-owned ATMs"); p. 1, col. 2 ("For deposits *made* at CO-OP Network ATMS …"); p. 1, col. 2 ("an item is unsigned by the *maker* . . ."). But when the Schedule wants to denote a more remote action performed away from the customer, it uses the verb "processed." *See, e.g.*, Ex. A at p. 1, col. 2 ("the ATM owner will impose a fee per item if an adjustment is *processed* due to one of the following discrepancies . . ."); *id.* ("For each adjustment initiated for deposit items *processed* and subsequently returned by the financial institution …"); *id.* ("the ATM owner will impose a fee per item at the time the adjustment is *processed*"). Here, the at-issue provision states NFCU will assess ISAFs for "Point-of-sale and ATM transactions *made* in foreign countries." If NFCU wanted to charge fees for international transactions *processed* in foreign countries, it would have said "processed" but instead chose to say "made." Therefore, the only reasonable reading of the provision, which is consistent with the Schedule's syntax, is that "transactions made in foreign countries" mean the customer's physical presence abroad.

18. Though it easily could have, NFCU failed to state in the Schedule that it would assess the ISAF on internet transactions with foreign merchants. For instance, in describing its own International Transaction Fee, Bank of America's Fee Schedule provides that "Foreign Transactions include internet transactions made in the U.S. but with a merchant who processes the transaction in a foreign country."[9] This language adequately puts accountholders on notice that online transactions made in the U.S. may incur international transaction fees. But NFCU wholly fails to incorporate any such language in its contract, to the detriment of its customers, like Plaintiff, who find themselves unwitting victims of bank fees to which they did not knowingly subscribe.

---

[9] https://www.bankofamerica.com/deposits/resources/personal-schedule-fees.go (p. 10).

As Bank of America did, NFCU easily could have included language in its contract of adhesion providing that internet purchases made within the United States to foreign merchants would incur ISAFs.

19. Therefore, NFCU breaches its account agreement with customers when it assesses the 1% ISAF on internet purchases made from within the United States.

**III.   The Contract Term "Made in Foreign Countries" is, at Best, Ambiguous**

20. NFCU does not define anywhere in the Schedule or any other document constituting its operative account agreement with debit cardholders, including Plaintiff, what it means for NFCU customers to engage in "transactions made in foreign countries."  The term "made in foreign countries", is therefore ambiguous at best as to what it encompasses.  In the absence of an explicit definition or disclosure, the Schedule reasonably discloses to accountholders, including Plaintiff, that they will only be charged an ISAF if they make a purchase while in a foreign country.

21. By failing to define the term "made in foreign countries" NFCU has opportunistically abused this silence and surreptitiously charged ISAFs when they could not be reasonably expected based on the contract.

22. NFCU also breaches the implied covenant of good faith and fair dealing to the extent it exercises any contractual discretion to take opportunistic advantage of such ambiguity in the Schedule by unilaterally defining "made in foreign countries" to include online transactions made from within the United States.

## CLASS ALLEGATIONS

23. Plaintiff brings this class action pursuant to Fed. R. Civ. P. 23 and all other applicable laws and rules, individually, and on behalf of all members of the following Classes:

**Nationwide Class**

All NCFU checking accountholders who, within the applicable statute of limitations, were assessed an International Service Assessment Fee for an internet purchase made from within the United States. (The "National Class").

**California Class**

All NCFU checking accountholders within California who, within the applicable statute of limitations, were assessed an International Service Assessment Fee for an internet purchase made from within the United States. (The "California Class").[10]

24. Excluded from the Classes are NFCU, its parents, subsidiaries, affiliates, officers, and directors; any entity in which NFCU has a controlling interest; all customers who make a timely election to be excluded; governmental entities; and all judges assigned to hear any aspect of this litigation, as well as their immediate family members.

25. Plaintiff reserves the right to modify or amend the definition of the proposed Classes before the Court determines whether certification is appropriate.

26. <u>Numerosity</u>. The members of the Classes are so numerous that joinder is impractical. The Classes consist of thousands of members, the identity of whom is within the knowledge of and can be ascertained only by resort to NFCU's records. NFCU collectively have the administrative capability through its computer systems and other records to identify all members of the Classes, and such specific information is not otherwise available to Plaintiff.

27. <u>Common Questions Predominate</u>. There are numerous questions of law and fact common to the Classes and those common questions predominate over any questions affecting only individual Class members. Among the questions of law and fact common to the Classes are:

    a. Whether NFCU charged ISAFs on amounts exceeding the permissible transaction amount;

    b. Whether NFCU breached its contract with consumers by charging ISAFs on internet purchases within the United States;

---

[10] The "National Class" and "California Class" are hereinafter collectively referred to as the "Classes."

   c. Whether NFCU's conduct violated of the implied covenant of good faith and fair dealing;

   d. Whether NFCU converted money belonging to Plaintiff and Class members through its ISAF policies and practices;

   e. Whether NFCU reserved discretion in defining the circumstances constituting "transactions made in foreign countries"; and, if so, whether NFCU failed to exercise such discretion in good faith.

   f. Whether Defendant's unlawful conduct, as alleged herein, was intentional and knowing;

   g. Whether Plaintiff and Classes are entitled to damages, and in what amount;

   h. Whether Plaintiff and the Classes are entitled to declaratory relief;

   i. Whether Plaintiff and the Classes are entitled to an award of reasonable attorneys' fees, interest, and costs of suit.

28. *Typicality*.  The claims of the representative Plaintiff are typical of the claims of the Classes in that the representative Plaintiff, like all Class members, was charged a hidden ISAF by NFCU.  The representative Plaintiff, like all Class members, has been damaged by NFCU's uniform misconduct of assessing unfair and unconscionable fees in breach of its account agreement.  Further, the factual basis of NFCU's misconduct is common to all Class members and represents a common thread of unfair and unconscionable conduct resulting in injury to all Class members.  Plaintiff's claims arise out of the same wrongful ISAF policies and practices and breaches of NFCU's Schedule.

29. *Adequacy*.  Plaintiff is an adequate representative of each of the Classes in that Plaintiff has suffered harm and been damaged as a result of NFCU's improper business practices. Additionally, (1) Plaintiff is committed to the vigorous prosecution of this action and has retained competent counsel experienced in the prosecution of class actions and, in particular, class actions on behalf of consumers and against financial

institutions; (2) Plaintiff has no interests antagonistic to the interests of any other Class member; (3) Plaintiff anticipates no difficulty in the management of this litigation as a class action; and (4) Plaintiff's legal counsel has the financial and legal resources to meet the substantial costs and legal issues associated with this type of litigation. Accordingly, Plaintiff is an adequate representative and will fairly and adequately protect the interests of the Class.

30. <u>Superiority</u>. A class action is superior to other available methods for the fair and efficient adjudication of this controversy. Since the amount of each individual Class member's claim is small relative to the complexity of the litigation, and due to the financial resources of NFCU, no Class member could economically seek legal redress individually for the claims alleged herein. Therefore, absent a class action, the Class members will continue to suffer losses and NFCU's misconduct will proceed without remedy. Even if Class members themselves could afford such individual litigation, the court system could not. Given the complex legal and factual issues involved, individualized litigation would significantly increase the delay and expense to all parties and to the Court. Individualized litigation would also create the potential for inconsistent or contradictory rulings. By contrast, a class action presents far fewer management difficulties, allows claims to be heard which would otherwise go unheard because of the relative expense of bringing individual lawsuits, and provides the benefits of adjudication, economies of scale and comprehensive supervision by a single court.

## FIRST CLAIM FOR RELIEF

**Breach of Contract**
**(On behalf of the Classes)**

31. Plaintiff incorporates the preceding allegations by reference as if fully set forth herein.

32. Plaintiff and the Classes have contracted with NFCU for bank account deposit, checking, ATM, and debit card services, agreeing that Virginia law applies.

33. No contractual provision authorizes NFCU to assess an ISAF of 1% of the transaction amount for internet purchases made from within United States.

34. On the contrary, NFCU and Class members, including Plaintiff, contracted for terms that include that NFCU is only permitted to impose a fee of 1% "transactions made in foreign countries." Ex. A at p. 3.

35. Therefore, by imposing fees beyond those it was contractually permitted to impose, NFCU breached the terms of its account agreement.

36. Plaintiff and Class members have performed all, or substantially all, of the obligations imposed on them under the account agreement.

37. Plaintiff and Class members have sustained damages as a result of NFCU's breach of the account agreement.

38. As California and Virginia law on breach of contract is the same or substantially the same with respect to all other states in which NFCU does business, Plaintiff asserts this claim on behalf of the National Class and California Class.

## SECOND CLAIM FOR RELIEF

### Breach of the Implied Covenant of Good Faith and Fair Dealing
### (On behalf of the Classes)

39. Plaintiff incorporates the preceding allegations by reference as if fully set forth herein.

40. Plaintiffs and members of the Class and NFCU have contracted for bank account deposit, checking, ATM, and debit card services, agreeing that Virginia law applies.

41. Under Virginia law, and the laws of the states where NFCU does business, every contract carries with it an implied covenant of good faith and fair dealing. Whether by common law or statute, all such contracts impose upon each party a duty of good faith and fair dealing. Good faith and fair dealing, in connection with executing contracts and discharging performance and other duties according to their terms, means preserving the spirit—not merely the letter—of the bargain. Put differently, the parties

to a contract are mutually obligated to comply with the substance of their contract in addition to its form. Evading the spirit of the bargain and abusing the power to specify terms constitute examples of bad faith in the performance of contracts.

42.  Subterfuge and evasion violate the obligation of good faith in performance even when an actor believes their conduct to be justified. Bad faith may be overt or may consist of inaction, and fair dealing may require more than honesty. Examples of bad faith are evasion of the spirit of the bargain, willful rendering of imperfect performance, *abuse of a power to specify terms*, and interference with or failure to cooperate in the other party's performance.

43.  NFCU has breached the implied covenant of good faith and fair dealing in the Schedule through its ISAF policies and practices, as alleged herein, of charging its customers hidden ISAFs on internet purchases made from within the United States. Specifically, NFCU harms consumers by exercising its contractual discretion in bad faith—even though that discretion is only vested in NFCU—in a number of ways which no reasonable consumer would anticipate. First, the term "made in foreign countries" is undefined (though it can only reasonably have the meaning Plaintiff ascribes to it), and the NFCU uses its discretion to define "made in foreign countries" in a manner contrary to any reasonable, common sense understanding of that term. In NFCU's definition, transactions are "made in foreign countries" even if they are made by NFCU accountholders within the United States.

44.  NFCU uses these contractual discretion points to extract ISAFs on transactions that no reasonable consumer would believe could cause ISAFs.

45.  Plaintiff and Class members have performed all, or substantially all, of the obligations imposed on them under the contract in good faith.

46.  Plaintiff and Class members have sustained damages as a result of NFCU's breach of the implied covenant of good faith and fair dealing.

47.  As California and Virginia law on breach of the implied covenant of good faith and fair dealing is the same or substantially the same with respect to all other states

in which NFCU does business, Plaintiff asserts this claim on behalf of the National Class and California Class.

### THIRD CLAIM FOR RELIEF

#### Conversion
#### (On behalf of the Classes)

48. Plaintiff incorporates the preceding allegations by reference as if fully set forth herein.

49. NFCU had and continues to have a duty to maintain and preserve its customers' checking accounts and to prevent their diminishment through its own wrongful acts.

50. NFCU has wrongfully collected inflated ISAFs from Plaintiff and the Class members, and has taken specific and readily identifiable funds from their accounts in doing so.

51. NFCU has assumed and exercised ownership and possession over these funds in hostility to the rights of Plaintiff and Class members without proper authorization or legal justification.

52. NFCU continues to retain these funds unlawfully without Plaintiff's or Class members' consent.

53. NFCU intends to permanently deprive Plaintiff and Class members of these funds, which are properly owned by Plaintiff and Class members, and not NFCU, which now claims that it is entitled to their ownership and possession, contrary to the rights of Plaintiff and the Class members.

54. Plaintiff and Class members have a right to ownership and possession of these funds superior to any right of NFCU and are entitled to the immediate possession of these funds.

55. NFCU has wrongfully converted these specific and readily identifiable funds.

56. NFCU's wrongful conduct is continuing.

57. As a direct and proximate result of this wrongful conversion, Plaintiff and the Class members have suffered and continue to suffer damages.

58. By reason of the foregoing, Plaintiff and the Class members are entitled to recover from NFCU all damages and costs permitted by law, including all amounts that NFCU has wrongfully converted.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays on behalf of herself and all others similarly situated, for judgment against Defendant as follows:

1. declaring NFCU's International Service Assessment Fee policies and practices to be wrongful, unfair, and unconscionable and in breach of the Schedule and NFCU's account agreement;

2. actual damages in an amount according to proof;

3. punitive and exemplary damages;

4. pre-judgment interest at the maximum rate permitted by applicable law;

5. costs and disbursements assessed by Plaintiff in connection with this action, including reasonable attorneys' fees pursuant to the account agreement, Code of Civil Procedure § 1021.5, and other applicable law; and

6. such other relief as this Court deems just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff hereby demands a jury trial for all of the claims so triable.

Dated: August 21, 2020                **CARLSON LYNCH LLP**

By: */s/Todd D. Carpenter*
TODD D. CARPENTER (234464)
tcarpenter@carlsonlynch.com
SCOTT G. BRADEN (305051)
sbraden@carlsonlynch.com
1350 Columbia St., Ste. 603
San Diego, CA 92101
Tel.: 619-762-1900
Fax: 619-756-6991

*Attorneys for Plaintiff and the Proposed Class*

**CARLSON LYNCH, LLP**
TODD D. CARPENTER (234464)
tcarpenter@carlsonlynch.com
SCOTT G. BRADEN (305051)
sbraden@carlsonlynch.co,
1350 Columbia Street, Suite 603
San Diego, CA 92101
Tel:   619-762-1910
Fax:   619-756-6991

*Attorneys for Plaintiff
and the Proposed Class*

# UNITED STATES DISTRICT COURT

# SOUTHERN DISTRICT OF CALIFORNIA

| SIOBHAN MORROW, on Behalf of Herself and All Others Similarly Situated, Plaintiff, v. NAVY FEDERAL CREDIT UNION, Defendant. | Case No. **TABLE OF CONTENTS—EXHIBITS** |
|---|---|

| **Exhibit** | **Page(s)** |
|:---:|:---:|
| A | 16-19 |
| B | 20-22 |